JUDGE BUCHWALD

## 12 CIV 5915

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JENNIFER KOO,                                          :        ____Civ. ____
                                                       :
                          Plaintiff,                   :        **COMPLAINT**
                                                       :        **WITH JURY DEMAND**
              -against-                                :
                                                       :
BARCLAYS CAPITAL, INC.,                                :
                                                       :
                          Defendant.                   :
------------------------------------------------------------ X

RECEIVED
AUG 02 2012
U.S.D.C. S.D.N.Y.
CASHIERS

## COMPLAINT

Plaintiff Jennifer Koo, by her attorneys, Liddle & Robinson, L.L.P., alleges as follows:

## THE NATURE OF THE ACTION

1.     This is a civil action for damages and remedies for (1) sex discrimination in employment against Ms. Koo in violation of (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII"), (b) the New York State Executive Law § 296 et seq. ("New York State Human Rights Law"), (c) the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law"), and (2) retaliation against Ms. Koo for complaining of such discrimination in violation of (a) Title VII, (b) the New York State Human Rights Law, and (c) the New York City Human Rights Law.

## THE PARTIES

2.      Ms. Koo is a thirty-three (33) year old female.  She presently resides at 350 West 42nd Street, Apartment 25K, New York, New York 10036.

3.      Defendant Barclays Capital, Inc. ("Barclays") is an international investment bank with offices in New York, New York.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C §§ 1331 and 1367.

5.      Ms. Koo filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") on December 8, 2011 and received a Notice of Right to Sue on May 4, 2012, which is attached to this Complaint as Exhibit A.

## VENUE

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant resides in the Southern District of New York and a substantial part of the events giving rise to Ms. Koo's claims occurred within the Southern District of New York.

## SUMMARY

7.      Ms. Koo joined Barclays Capital Inc. in 2005 as an Associate in the Commodity Investor Solutions Team in New York.

8.      Throughout her employment, Ms. Koo was qualified for her position and performed her duties in a professional and competent manner.

9.      Despite Ms. Koo's stellar performance at Barclays, upon information and belief, Barclays paid her less than her male peers who were similarly or less qualified than her and had similar if not fewer achievements than her.

10.     On May 27, 2011, Barclays informed Ms. Koo that it was terminating her employment.  Barclays terminated Ms. Koo's employment because she is a woman and because she had complained of unlawful sex-based discrimination.


## FACTS

11.     Ms. Koo joined Barclays in 2005 as an Associate in the Commodity Investor Solutions Team in New York.

12.     In June 2006, Barclays transferred Ms. Koo internally to the Commodity Hybrids Trading Team in London.  In January 2009, Ms. Koo returned to working for Barclays in New York.  Ms. Koo was one of only three female commodities traders in the entire New York office.

13.     During 2007, Ms. Koo worked out of Barclay's London office where she worked with another Associate, Marcin Toczydlowski.  While working in London, Mr. Toczydlowski told Ms. Koo that she "should buy some new clothes," in front of her peers.  This was a sex-based comment.

14.     By July 2009, Ms. Koo had been promoted by James Groves, Managing Director and head of the Commodity Hybrids Trading group, to Vice President and had relocated back to New York.  Mr. Toczydlowski also relocated back to New York and continued to make unlawful disparaging remarks.  For example, he made comments about Barclays employees based on their national origin and race.

15.     Also during July 2009, there were frequent instances where Ms. Koo's boss, Pavel Zador, inappropriately undermined her authority and position within the company by

3

giving instructions to Barclays salespeople with whom she worked on a daily basis in conflict with her own instructions.  Ms. Koo's instructions comported with the procedures Mr. Groves had established and she told Mr. Zador this.   Zador would not have undermined Ms. Koo in this way if she was a man.  For example, he treated her peer Mr. Toczydlowski with respect that he did not give Ms. Koo.

16.     On August 7, 2009, Ms. Koo had a mid-year appraisal with James Groves, a Managing Director and Head of the Commodity Hybrids Trading group she worked in.  During this meeting, Ms. Koo received high praise for her trading and risk management.  During this meeting, Ms. Koo complained to Mr. Groves that Mr. Zador had been undermining her and marginalizing her with respect to her dealings with brokers, which was one of her primary roles.  Mr. Groves agreed that Mr. Zador's behavior was inappropriate.  It is believed that Mr. Groves reprimanded Mr. Zador, because he stopped the specific behavior of which Ms. Koo had complained.

17.     After Ms. Koo returned to the New York office in 2009, it was very difficult for her to gain attendance at client dinners and events.  In fact, except for one event (to which she also had difficulty in gaining attendance), Barclays never invited Ms. Koo to any client dinners or events.  Barclays also never invited Ms. Koo to the annual Barclays-hosted Commodity Conferences held in New York and Barcelona.  Barclays did, however, invite her male peers to such events.  For example, Barclays did not even invite Ms. Koo to the 2010 New York Barclays Commodity Conference.  At this time, Ms. Koo was a third-year V.P.  Barclays did, however, invite her male peers who were second-year V.P.s in London to the Barcelona conference.  Even when Ms. Koo was in London she was not invited to the Barcelona conference.  These events

would have been great opportunities for Ms. Koo to grow her business with clients and other Barclays trading groups and sales people.

18.     On January 25, 2010, Ms. Koo received a year-end appraisal.  Ms. Koo was generally given high praise for her performance of her duties, but was criticized for not improving her relationships with sales people.  First, as described above, Barclays prevented Ms. Koo from improving these relationships because it excluded her from attending events and conferences which are the primary vehicles for establishing and growing such relationships. Second, her relationships within Barclays were undermined by a perception fostered by her boss, Mr. Zador, that Ms. Koo was too "black and white."  While Ms. Koo was in London working for Barclays, she worked under specific guidelines implemented by Barclays for executing trades and reporting errors.  Some of these guidelines, for example, were put in place by Barclays's Compliance department and Risk Management department, along with other departments.  As the trading was global, the same rules and requirements applied in the U.S. as well.  When Ms. Koo relocated back to the New York office in 2009, however, that office had a much higher rate of errors, and a much slower response to errors, as a result of a much more lax view on the applicable rules that Mr. Groves himself had educated Ms. Koo on while she was in London. Because of Ms. Koo's commitment to following these Barclays guidelines, certain co-workers viewed her as unaccommodating.  Pavel Zador in particular did not support Ms. Koo's approach and would bend the rules for trades, which further exacerbated the problem Ms. Koo had with her co-workers, namely the sales team.  If Ms. Koo was a man, Barclays would not have ignored her directions that errors needed to be immediately addressed in accordance with Barclays's own guidelines.  If Ms. Koo was a man, Mr. Zador would have supported her position.

5

19.     In February 2010, Ms. Koo received her compensation for 2009.  Despite the great success enjoyed by Barclays and Ms. Koo in 2009, her compensation of $310,000 was far lower — by approximately 25% — than the $400,000 she had expected and deserved.  Ms. Koo's pay was below market at Barclays.  Upon information and belief, Barclays would have paid Ms. Koo more if she was a man.

20.     On July 22, 2010, Ms. Koo received a mid-year appraisal where she was criticized for her lack of improvement with co-worker relationships and for not being more "approachable."  These were sex-based criticisms.  Further, these allegations are undermined by Barclays' failure to invite Ms. Koo to any business dinners or client events.

21.     After Ms. Koo's mid-year appraisal, she worked very hard on meeting the objectives and feedback Barclays gave her.  In August 2010, she told Mr. Zador that she wanted Barclays to consider her for a promotion as well as "book ownership," which means she would have authority over the trades and be named and credited for the book's performance, whereas previously Mr. Zador was credited for Ms. Koo's success on the book.  Mr. Zador told Ms. Koo he would discuss it with Mr. Groves.  Soon after, Mr. Zador told Ms. Koo Barclays would consider her request in December 2010.  By this point in Ms. Koo's career — as a 3rd year Vice President with 10 years of experience in finance and having worked on the same team for 4 years — it was normal for people with her level of experience to have book ownership.  Upon information and belief, if Ms. Koo was a man, Barclays would have already given her book ownership.

22.     Following Ms. Koo's mid-year appraisal, she was tremendously successful.  In November of 2010, Ms. Koo was responsible for initiating and implementing a transaction worth millions to the bank.  Ms. Koo completed the transaction without any assistance from her boss,

Pavel Zador, who was out of the office for three and a half weeks working on his apartment and taking paternity leave.  Despite this great achievement, Ms. Koo never received any recognition from Barclays or her superiors for the transaction.

23.     In December 2010, the sector Ms. Koo solely handled for her group — the Agriculture Sector — was the only sector that was profitable for 2010.

24.     At the end of January 2011, Ms. Koo spoke with Pavel Zador privately to again discuss a promotion and taking ownership and responsibility for the book she was trading.  Ms. Koo had objectively been very successful at Barclays and had always received positive feedback about specific objectives as outlined in her performance evaluations and so it was the logical next step for her to take on this extra responsibility.

25.     Despite this success, Ms. Koo was surprised when Mr. Zador told her that he had received negative feedback about her when discussing her performance with others after her request for book ownership and informed her that there may be a re-organization across her sector and that as such Ms. Koo should not make any noise about compensation, promotion, or book ownership.

26.     At the end of February 2011, Ms. Koo received her compensation numbers for the previous year.  Despite her success, these numbers actually decreased by approximately a third of what she had received for 2009.  Ms. Koo received a salary of $200,000 and a bonus of only $14,000.

27.     In mid-March 2011, Benoit Bosc, a male trader with no experience in index products, approached Ms. Koo and stated that he needed to start sitting with her to learn about the Index Derivative and Custom Index Derivative books she worked on because he was going to

be taking over her role.  When Ms. Koo expressed her surprise to Mr. Bosc, he stated: "I'm surprise[d] you don't know or haven't heard, since Pavel has known about this for a few weeks."

28.     When Ms. Koo met with Pavel Zador shortly thereafter to discuss this, Mr. Zador informed her that it was possible that there would be room for both Ms. Koo and Mr. Bosc in the trading group, but that she should consult with Bob Henderson, a Managing Director.  When Ms. Koo spoke to Mr. Henderson he said that nothing had been decided yet, but that she should continue to teach Mr. Bosc about her duties.

29.     On April 5, 2011, Ms. Koo met with Pavel Zador privately and he told her that through the end of April she would be "under review for termination."  Mr. Zador referenced, among other things, Ms. Koo's rules-and-regulations oriented approach to the job and how this had put-off many of her colleagues.  Ms. Koo was told that if her attitude and enthusiasm about the job did not improve dramatically her employment with Barclays would be terminated.

30.     On April 6, 2011, Ms. Koo met with Lourdes Ledan in Human Resources to discuss the situation.  Ms. Koo told Ms. Ledan that there were very few female traders in the commodities group (only three in New York) and that it was a difficult environment for a female trader to work in.   Ms. Koo told Ms. Ledan that she was considering obtaining legal representation with respect to her complaints of sexual harassment and discrimination.  Ms. Ledan asked if Ms. Koo wanted to initiate an investigation, but Ms. Koo declined because she feared that instigating an investigation could result in Barclays terminating her employment at the end of her April review.

31.     When Ms. Koo told Pavel Zador about her meeting with HR later that day, he told her smugly that, "HR can't really help you or do anything."

32.     In mid-April 2011, Todd Dilatush and Nataliya Hafiychuk consulted Ms. Koo about a certain transaction they wanted to make.  They wanted to "pre-hedge" a trade without adhering to relevant Barclays guidelines.  Ms. Koo discussed the trade with Scott Alvey, a trader on the CD Funding desk, who would have known whether or not the trade could be authorized. Mr. Alvey told Ms. Koo, as she thought, that the "pre-hedging" Mr. Dilatush and Ms. Hafiychuck wanted to execute was not allowed.   Ms. Koo also asked Philippe Comer, a Managing Director of Commodity Investor Solutions, about the trade and he confirmed that it was not allowed.   Ms. Koo was later informed by Pavel Zador that Mr. Dilatush and Ms. Hafiychuk were not happy that she had spoken to Mr. Alvey, even though she was merely complying with Barclays' guidelines.  If Ms. Koo was a man, Mr. Zador, her boss, would have supported her.

33.     At the end of April 2011, Jennifer Pomerantz, who works in Barclays' HR department, e-mailed Ms. Koo about Ms. Koo's complaint of sexual discrimination.  Ms. Koo and Ms. Pomerantz met shortly thereafter about Ms. Koo's complaint.

34.     By this time, it was commonly known that Benoit Bosc, a male who was less qualified and less experienced than Ms. Koo, was going to replace her.  Indeed, Ms. Koo had already handed over her index book responsibilities to Mr. Bosc, as instructed by Mr. Zador and Mr. Henderson.

35.     By the beginning of May, all of Ms. Koo's other peers had discussed and finalized their new roles with Mr. Henderson except for Ms. Koo. Ms. Koo was very distressed at this time, but complied with Mr. Henderson's and Mr. Zador's orders to hand everything over to Mr. Bosc.

36.     On May 27, 2011, Barclays informed Ms. Koo that it was terminating her employment.

37.     Upon information and belief, Barclays has a pattern and practice of discriminating against its female employees, among other things, by denying them the pay and opportunities that Barclays provides its male employees.

## FIRST CLAIM
(Sex Discrimination Under Title VII)

38.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 37 above as if separately set forth herein.

39.     At all relevant times, Ms. Koo was an "employee" of Defendant under Title VII, 42 U.S.C. § 2000e(f).

40.     Upon information and belief, Defendant is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

41.     By its actions detailed above, Defendant has unlawfully discriminated against Ms. Koo on the basis of her sex in violation of Title VII.

42.     As a result of Defendant's discriminatory conduct, Ms. Koo has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

43.     Upon information and belief, Defendant's discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. Koo's rights.  Ms. Koo is therefore entitled to punitive damages under Title VII.

**SECOND CLAIM**
(Sex Discrimination Under
The New York State Human Rights Law)

44.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 43 above as if separately set forth herein.

45.     At all relevant times, Ms. Koo was an "employee" for purposes of § 296 of the New York State Human Rights Law.

46.     Defendant is an "employer" for purposes of § 296 of the New York State Human Rights Law.

47.     By its actions detailed above, Defendant has unlawfully discriminated against Ms. Koo on the basis of her sex in violation of the New York State Human Rights Law.

48.     Upon information and belief, Defendant's conduct towards Ms. Koo constitutes willful discrimination.

49.     As a result of the willful discrimination described above, Ms. Koo has suffered substantial loss of earnings and benefits, and she will continue to do so in the future. Accordingly, Defendant is liable to Ms. Koo for both back pay and front pay in an amount to be determined at trial, mental and emotional anguish, plus interest and costs.

**THIRD CLAIM**
(Gender Discrimination Under
The New York City Human Rights Law)

50.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 49 above as if separately set forth herein.

51.     Ms. Koo is a "person" under § 8-102(1) of the New York City Human Rights Law.

52.     Defendant is an "employer" subject to provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

53.     By its actions detailed above, Defendant has unlawfully discriminated against Ms. Koo on the basis of her sex in violation of § 8-107(1)(a) of the New York City Human Rights Law.

54.     As a result of the discrimination described above, Ms. Koo has suffered substantial damages, including emotional distress and mental anguish, in an amount to be determined at trial.

55.     Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Ms. Koo's rights, entitling her to punitive damages under the New York City Human Rights Law.

## FOURTH CLAIM
(Interference With Protected Rights Under New York City Human Rights Law)

56.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 55 above as if separately set forth herein.

57.     Ms. Koo is a "person" under § 8-102(1) of the New York City Human Rights Law.

58.     Defendant is an "employer" subject to provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

59.     By its actions detailed above, Defendant has unlawfully discriminated against Ms. Koo by interfering with the exercise and enjoyment of her protected rights in violation of § 8-107(19) of the New York City Human Rights Law.

60.     As a result of the discrimination described above, Ms. Koo has suffered substantial damages, including emotional distress and mental anguish, in an amount to be determined at trial.

61.     Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Ms. Koo's rights, entitling her to punitive damages under the New York City Human Rights Law.

## FIFTH CLAIM
(Employer Liability For Discriminatory Conduct By Employee, Agent Or Independent Contractor Under New York City Human Rights Law)

62.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 61 above as if separately set forth herein.

63.     Ms. Koo is a "person" under § 8-102(1) of the New York City Human Rights Law.

64.     Defendant is an "employer" subject to provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

65.     By the unlawfully discriminatory actions of its employees detailed above, Defendant has unlawfully discriminated against Ms. Koo under § 8-107(13) of the New York City Human Rights Law.

66.     As a result of the discrimination described above, Ms. Koo has suffered substantial damages, including emotional distress and mental anguish, in an amount to be determined at trial.

67.     Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Ms. Koo's rights, entitling her to punitive damages under the New York City Human Rights Law.

## SIXTH CLAIM
(Retaliation In Violation Of Title VII)

68.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 67 above as if separately set forth herein.

69.     Ms. Koo opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under Title VII by asserting that she was being discriminated against in oral complaints which she made to Defendant.

70.     Defendant retaliated against Ms. Koo for having engaged in the protected activity described in the preceding paragraph by (a) subjecting her to discriminatory treatment; (b) reassigning her primary role to a less qualified and less experienced male Barclays employee; and (b) terminating her employment on May 27, 2011.

71.     Defendant's actions constitute discrimination and retaliation against Ms. Koo in violation of Title VII, 42 U.S.C. § 2000e-3.

72.     As a result of Defendant's retaliation, Ms. Koo has suffered substantial damages, including, loss wages and benefits and emotional distress, in an amount to be determined at trial.

73.     Upon information and belief, Defendant's retaliation was engaged in with malice and/or reckless indifference to Ms. Koo's federally protected rights.  Ms. Koo is therefore entitled to punitive damages under Title VII.

14

## SEVENTH CLAIM
(Retaliation In Violation Of The
New York State Human Rights Law)

74.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 73 above as if separately set forth herein.

75.     Ms. Koo opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law by asserting that she was being discriminated against in oral complaints she made to Defendant.

76.     Defendant retaliated against Ms. Koo for having engaged in the protected activity described in the preceding paragraph by (a) subjecting her to discriminatory treatment; (b) reassigning her primary role to a less qualified and less experienced male Barclays employee; and (b) terminating her employment on May 27, 2011.

77.     Defendant's actions constitute discrimination and retaliation against Ms. Koo in violation of the New York State Human Rights Law, § 296.

78.     As a result of Defendant's retaliation, Ms. Koo has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

## EIGHTH CLAIM
(Retaliation In Violation Of The
New York City Human Rights Law)

79.     Ms. Koo repeats and realleges the allegations contained in paragraphs 1 through 78 above as if separately set forth herein.

80.     Ms. Koo opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law by asserting that she was being discriminated against in oral complaints she made to Defendant.

81.     Defendant retaliated against Ms. Koo for having engaged in the protected activity described in the preceding paragraph by (a) subjecting her to discriminatory treatment; (b) reassigning her primary role to a less qualified and less experienced male Barclays employee; and (b) terminating her employment on May 27, 2011.

82.     Defendant's actions constitute discrimination and retaliation against Ms. Koo in violation of the New York City Human Rights Law, § 8-107(7).

83.     As a result of Defendant's retaliation, Ms. Koo has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

84.     Upon information and belief, Defendant's retaliatory actions against Ms. Koo were taken with reckless indifference to Ms. Koo's rights, entitling her to punitive damages under the New York City Human Rights Law.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendant as follows:

A.     On the First Claim for violation of Title VII, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, punitive damages, attorney's fees, interest, and costs, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

B.      On the Second Claim for violation of New York State Human Rights Law, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, interest, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

C.      On the Third Claim for violation of New York City Human Rights Law, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, punitive damages, attorney's fees,  interest, and costs, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

D.      On the Fourth Claim for violation of New York City Human Rights Law, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, punitive damages, attorney's fees, interest, and costs, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

E.      On the Fifth Claim for violation of New York City Human Rights Law, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, punitive damages, attorney's fees, interest, and costs, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

F.      On the Sixth Claim for violation of Title VII, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, punitive damages, attorney's fees, interest, and costs, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order

enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

      G.    On the Seventh Claim for violation of New York State Human Rights Law, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, interest, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

      H.    On the Eight Claim for violation of New York City Human Rights Law, back pay, front pay or reinstatement and employment benefits, plus compensatory damages, punitive damages, attorney's fees, interest, and costs, and damages resulting from Ms. Koo's mental and emotional anguish, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, all to the maximum extent allowable by law;

      I.    All such other and further relief as this Court deems just and proper.

Dated:     New York, New York
            August 2, 2012

                                    LIDDLE & ROBINSON, L.L.P.

                                    By: _____
                                      Andrea M. Paparella
                                    800 Third Avenue
                                    New York, New York 10022
                                    Phone: (212) 687-8500
                                    Fax: (212) 687-1505
                                    apaparella@liddlerobinson.com

                                    *Attorneys for Plaintiff*

18

# EXHIBIT A

FEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jennifer Koo<br>350 West 42nd Street<br>Apt. 25k<br>New York, NY 10036 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|---|
| EEOC Charge No. | | EEOC Representative<br>Esther  Gutierrez,<br>Investigator | Telephone No. |
| 520-2012-00682 | | | (212) 336-3756 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Kevin Berry_                                   May 3, 2012

**Kevin J. Berry,**                          *(Date Mailed)*
**District Director**

Enclosures(s)

cc:   Allie Kramer
      **Employee Relations**
      **BARCLAYS CAPITAL**
      200 Park Avenue
      New York, NY 10166

      Eric Johnson, Esq.
      **LIDDLE & ROBINSON LLP**
      800 Third Avenue
      New York, NY 10022

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*